IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MARIA DE JESUS PARTIDA ARANDA, et al., | § § § § | |
| Plaintiffs, | § § | Civil Action No. 3:18-CV-0494-D |
| VS. | § § | |
| YRC INC., et al., | § § | |
| Defendants. | § § | |

MEMORANDUM OPINION
AND ORDER

In this removed lawsuit arising from a fatal automobile accident, defendants YRC Inc. ("YRC") and Jeffrey Thorp ("Thorp") move for partial summary judgment, contending that there is no genuine dispute of material fact as to whether Thorp and YRC were grossly negligent, or whether the decedent endured any conscious pain and suffering prior to his death. For the reasons that follow, the court grants defendants' motion insofar as plaintiffs seek to hold YRC vicariously liable for Thorp's alleged gross negligence, and denies the motion in all other respects.

I

On July 17, 2017 plaintiffs Maria de Jesus Partida Aranda ("Maria"), Justino Gutierrez ("Justino"), and Jonathan Gutierrez Partida ("Jonathan")[1] were traveling

---

[1]The remaining plaintiffs—Justin Gutierrez Partida and G.G., a minor child—were not in the vehicle at the time of the accident.

southbound on Interstate 35 ("I-35") in a pickup truck.[2] Justino was driving, his wife Maria was in the back seat, and their son Jonathan was in the front passenger seat. The family was running errands, and Justino was using the trip as an opportunity to teach his teenage son about driving. They were in the far right lane of I-35—in standstill traffic—waiting to exit onto Royal Lane.

At the same time, defendant Thorp was driving a double-trailer semi truck southbound on I-35. He was transporting freight for his employer, YRC, from Independence, Missouri to Irving, Texas. Between 1995 and 2008, Thorp received 50 different warning letters, suspensions, and discharges from YRC,[3] was involved in five non-preventable accidents, and caused one preventable injury. The vast majority of Thorp's disciplinary infractions involved tardiness or absenteeism, but he also received multiple warning letters for driving for longer hours than the law permitted.

According to plaintiffs, Thorp was behind schedule and in a hurry on July 17. He was approaching his 14-hour shift limit under the Federal Motor Carrier Safety Act, and he would soon be forced to pull over for a break. Thorp was traveling in the center left lane as he approached the Royal Lane exit. Traffic in the far right lane was not moving, and the lane

---

[2]In deciding defendants' motion for partial summary judgment, the court views the evidence in the light most favorable to plaintiffs as the summary judgment nonmovants and draws all reasonable inferences in their favor. *See, e.g., Owens v. Mercedes-Benz USA, LLC*, 541 F.Supp.2d 869, 870 n.1 (N.D. Tex. 2008) (Fitzwater, C.J.) (citing *U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.)).

[3]Thorp received most of these letters while YRC was still operating as Yellow Transportation or Yellow Freight System, Inc.

immediately to Thorp's right was moving at a crawl. As Thorp drove by at 57 miles per hour, a red car[4] in the lane to Thorp's right changed into his lane. Thorp collided with the car.

In the resulting pile-up, another tractor-trailer struck plaintiffs' pickup truck. Jonathan testified about the impact:

> Q. . . . What is the first thing you remember about the accident?
>
> A. The movement.
>
> Q. And how would you describe that?
>
> A. It was strong like—something like a giant like grabbed a string and just pulled us with all of his force to the barricade [at] the side of the road.

Ps. App. 212. The force of the collision threw Justino toward the passenger side of the vehicle and left him lying at Jonathan's feet. Maria, meanwhile, was knocked unconscious. When she awoke, she saw that Jonathan had escaped from the pickup truck, but she and Justino were trapped inside. Rescuers had to extricate them. Justino was still breathing, but he was not moving or speaking, so first responders placed him in an ambulance and attempted to resuscitate him. Their efforts failed; Justino died as a result of the accident.

Plaintiffs filed this suit in August 2017 in Texas state court. Defendants removed the

---

[4]The driver of the red car, Joshua Richmond ("Richmond"), was originally named as a defendant in this case, but the claims against him were settled before the lawsuit was removed.

case to this court in March 2018.[5] The first amended complaint[6] that plaintiffs subsequently filed in this court alleges that Thorp acted with negligence and gross negligence in operating his tractor trailer, and that YRC acted with negligence and gross negligence in hiring, training, supervising, and entrusting a semi truck to Thorp. Based on theories of respondeat superior, agency, and joint-venture liability, plaintiffs allege that YRC is jointly and severally liable for any award against Thorp. Defendants now seek partial summary judgment on whether plaintiffs are entitled to damages for Justino's alleged pain and suffering; whether YRC acted with gross rather than ordinary negligence in hiring, training, and supervising Thorp; whether Thorp himself acted with gross rather than ordinary negligence in operating his tractor trailer; and whether YRC is vicariously liable for Thorp's alleged gross negligence. The parties have briefed the motion, and it is ripe for decision.

---

[5]Defendants contend that this case became removable in late February 2018, when plaintiffs settled their claims against Richmond. Plaintiffs never moved to remand.

[6]Plaintiffs filed an amended complaint (denominated a "complaint") in this court after the case was removed. After defendants filed their motion for partial summary judgment, but before plaintiffs filed a response, plaintiffs filed a pleading denominated a "first amended complaint." The first amended complaint makes identical factual and legal allegations, but it changes the capacity of two of the plaintiffs. Originally, Maria sued on behalf of all of her children, who were still minors. But Jonathan and Justin have since attained the age of majority, and are now plaintiffs in their own right. Thus defendants' partial summary judgment motion is not mooted by the filing of the first amended complaint; the court's references to the "complaint" refer to both plaintiffs' initial post-removal "complaint" and their "first amended complaint."

II

When a party moves for summary judgment on claims on which the opposing parties will bear the burden of proof at trial, the moving party can meet its summary judgment obligation by pointing the court to the absence of admissible evidence to support the opposing parties' claims. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party does so, the opposing parties must go beyond their pleadings and designate specific facts showing that there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is such that a reasonable jury could return a verdict in the opposing parties' favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The opposing parties' failure to produce proof as to any essential element of a claim renders all other facts immaterial. *See TruGreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.). Summary judgment is mandatory if the opposing parties fail to meet this burden. *Little*, 37 F.3d at 1076.

When a heightened proof standard will apply at trial, that standard controls at the summary judgment stage. *Anderson*, 477 U.S. at 254 (holding that where clear and convincing evidence standard would apply at trial of libel action, it applied in determining merits of summary judgment motion). Under Texas law, gross negligence must be proved by clear and convincing evidence. *Coastal Transp. Co. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 233 n.2 (Tex. 2004) (noting that, effective September 1, 1995, Texas law requires that plaintiff prove gross negligence by clear and convincing evidence). This

standard requires that plaintiffs adduce evidence that is "sufficient to make the existence of the facts highly probable," not merely evidence that is "sufficient to make the existence of fact more probable than not, as required by the preponderance standard." *Foley v. Parlier*, 68 S.W.3d 870, 880 (Tex. App. 2002, no pet.). Therefore, the proof must be "sufficient to produce in the mind of the fact finder a firm belief or conviction as to the truth of the allegation sought to be established." *Id.* (citing *In re D.T.*, 34 S.W.3d 625, 632 (Tex. App. 2000, pet. denied); *Faram v. Gervitz-Faram*, 895 S.W.2d 839, 843 (Tex. App. 1995, no writ)).

### III

Plaintiffs have identified evidence from which a reasonable jury could find by a preponderance of the evidence that Justino suffered conscious pain and suffering before his death.

Texas law permits certain plaintiffs to recover damages for personal injuries—including damages for pain and suffering—suffered by a decedent.

> At common law, an individual's action for personal injuries did not survive death. However, the Texas Legislature abrogated that rule, and now, by statute, a decedent's personal injury action survives death and may be prosecuted on his behalf. The purpose of the Texas Survival Act is to continue a decedent's cause of action beyond death to redress decedent's estate for decedents's injuries. Thus, a cause of action for personal injury does not abate because of the death of an injured person. Rather, the personal injury action survives the injured person's death and may be prosecuted on his behalf.

*Felan v. Ramos*, 857 S.W.2d 113, 118 (Tex. App. 1993, writ denied) (citations omitted)

(citing, *inter alia*, Tex. Civ. Prac. & Rem. Code Ann. § 71.021(a) (Vernon 1986)). Because the cause of action being asserted is that of the decedent, the only damages recoverable are those that the decedent actually suffered before his death. *Id.* (citing *Russell v. Ingersoll-Rand Co.*, 795 S.W.2d 243, 245 (Tex. App. 1990), *aff'd*, 841 S.W.2d 343 (Tex.1992)). That the decedent suffered pain and mental anguish before his death "may be established by circumstantial evidence, or inferred or presumed as a consequence of severe injuries." *Ruiz v. Guerra*, 293 S.W.3d 706, 722 (Tex. App. 2009, no pet.) (citing *SunBridge Healthcare Corp. v. Penny*, 160 S.W.3d 230, 248 (Tex. App. 2005, no pet.); *Borth v. Charley's Concrete Co.*, 139 S.W.3d 391, 395 (Tex. App. 2004, pet. denied)). "[C]onsciousness of approaching death is a proper element to be considered in evaluating mental suffering." *Id.* at 723 (quoting *Jenkins v. Hennigan*, 298 S.W.2d 905, 911 (Tex. Civ. App. 1957, writ ref'd n.r.e.)). But if there is no evidence that the decedent was conscious between the moment of injury and the moment of death, the decedent cannot be said to have suffered pain or mental anguish during that time. *See, e.g., Russell v. Ramirez*, 949 S.W.2d 480, 491-92 (Tex. App. 1997, no pet.).

Plaintiffs rely on two grounds to contend that a reasonable jury could find that Justino suffered pain and mental anguish before his death. First, they maintain that, because Maria saw Justino's feet moving after he was loaded into the ambulance, a reasonable jury could find that Justino was conscious after impact. Defendants maintain that when Maria's testimony is taken in context, no reasonable jury could find that Justino was conscious when he was in the ambulance. This is the full deposition exchange:

> Q. When the paramedics took your husband out of the truck, did they perform any type of work on him?
>
> A. Well, the only thing I saw is I was able to see my husband in the ambulance. And since he was so tall, I was able to see his feet. And what I felt, what I thought I saw, they was putting those things on him to resuscitate him. And I just remember that his feet and his legs were going up and down.
>
> Q. So you saw them trying to give him electrical shocks?
>
> A. I just saw that his feet were moving.

Ps. App. 15. Based on this testimony, a reasonable jury could certainly find that Justino's feet were moving only in response to the paramedics' resuscitation efforts. But a reasonable jury could also find that the movement Maria observed was circumstantial evidence of Justino's consciousness. *Cf. Choctaw Nation of Okla. v. Sewell*, 2018 WL 2410550, at *12 (Tex. App. May 29, 2018, pet dism'd) (finding that evidence supported pain and suffering award where decedent's feet were moving "for at least thirty seconds after [a rescuer] reached her").

Plaintiffs also contend that Justino was briefly aware of his impending death at the moment of impact. Under Texas law, even brief awareness of approaching death is sufficient to support a damages award. *See, e.g., Hurst Aviation v. Junell*, 642 S.W.2d 856, 859 (Tex. App. 1982, no writ) (concluding that pilot suffered mental anguish "in the fleeting period of time that elapsed between the time of the mid-air collision and the plane's impact with the ground"); *Green v. Hale*, 590 S.W.2d 231, 238 (Tex. Civ. App. 1979, no writ) (concluding that decedent suffered mental anguish in brief moment between falling off tailgate of

reversing truck and being crushed by the wheels). Jonathan testified that, when the semi truck collided with plaintiffs' vehicle, he felt a "big impact." Ps. App. 212. A reasonable jury could infer that, as a result of this impact, Justino was briefly aware of his impending death before losing consciousness—or at least that the impact caused him physical pain. Thus plaintiffs have met their burden to create a genuine dispute of material fact.

IV

Plaintiffs have produced sufficient evidence for a jury to find by clear and convincing evidence that Thorp and YRC acted with gross negligence.

A

Under Texas law, the "elements of a negligence cause of action are the existence of a legal duty, a breach of that duty, and damages proximately caused by the breach." *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004). Gross negligence is defined to mean an act or omission:

> (A) which when viewed objectively from the standpoint of the actor at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and
>
> (B) of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others.

Tex. Civ. Prac. & Rem. Code Ann. § 41.001(11) (West 2015).

B

Plaintiffs' gross negligence claim against Thorp essentially reduces to the contention that Thorp was driving too fast when the collision occurred. First, plaintiffs assert that Thorp was running late on the day of the collision, and was therefore in a hurry. Thorp was originally scheduled to depart from Independence, Missouri at 7:00 p.m. on July 16, 2017, and most likely would have arrived in Irving, Texas at around 5:00 a.m. or 6:00 a.m. the following morning. But Thorp's scheduled departure time was pushed back to 9:00 p.m. for unknown reasons. And when Thorp inspected his truck before departing, he discovered that one of the turn indicators was not functioning, so he had to wait an additional three hours for the truck to be repaired. At the time of the collision, Thorp had been on-duty for about 13 hours and 15 minutes. This meant that, in 45 minutes, he would have been required to stop and take a break for at least 10 hours before resuming driving. Plaintiffs point out that Thorp had been reprimanded in the past for excessive running times and delayed deliveries.

Defendants contend that, because Thorp was only 5 or 10 minutes from reaching his destination at the time of the collision, no reasonable jury could find that he was in a hurry. But drawing all reasonable inferences from the evidence in the light most favorable to plaintiffs, the court holds that a reasonable jury could infer that Thorp was in a rush. A reasonable jury might find that Thorp was eager to finish his route after more than 13 hours on duty, or that he was concerned about running out of time because he had in the past been reprimanded for delayed deliveries and running time violations.

Plaintiffs also assert that Thorp was driving dangerously fast in light of (1) the slow

pace of traffic in the lane immediately to his right, and (2) the presence of debris in the roadway. The uncontradicted evidence shows that Thorp was traveling at 57 miles per hour in the moments before the collision. A witness described Thorp as "barreling from the left," and moving "very, very fast." Ps. App. 26, 28. Thorp admitted during his deposition that it "wouldn't be a safe scenario" for traffic in one lane to be moving at 60 miles per hour while traffic in an immediately adjacent lane was at a standstill. Ps. App. 68-69. Yet Thorp never made any attempt to stop or slow down before the crash. Plaintiffs also contend, based on dash-cam footage from Thorp's truck, that Thorp observed debris in the road just before the collision. Again, Thorp admitted that a prudent driver should slow down when there is debris in the road—yet Thorp denied seeing any such debris, and did not slow down. Finally, Thorp admittedly saw that the red car had its left turn signal on as he approached. Yet this, too, failed to prompt Thorp to slow down or change lanes.

The court's role in deciding defendants' motion for partial summary judgment is not to resolve the fact question whether Thorp's actions and omissions actually constituted gross negligence. Rather, the court need only decide whether a reasonable jury could make this finding. *See, e.g., Anderson*, 477 U.S. at 247-48. Here, a reasonable jury could find that Thorp's rate of speed, "viewed objectively from the standpoint of the actor at the time of its occurrence[,] involve[d] an extreme degree of risk, considering the probability and magnitude of the potential harm to others." Tex. Civ. Prac. & Rem. Code Ann. § 41.001(11)(A); *see also Perez Librado v. M.S. Carriers, Inc.*, 2004 WL 1490304, at *3 (N.D. Tex. June 30, 2004) (Fitzwater, J.) (holding that evidence was sufficient to create

genuine issue of material fact as to whether defendant acted with gross negligence when "operat[ing] a tractor-trailer in an area that include[d] controlled intersections, at a speed of 56 to 58 miles per hour, while intentionally failing to observe the roadway for a period of perhaps 14 to 20 seconds"). And a reasonable jury could find, based on Thorp's admissions, that Thorp had "actual, subjective awareness of the risk involved." *See* Tex. Civ. Prac. & Rem. Code Ann. § 41.001(11)(B). This is sufficient to defeat the summary judgment motion.

C

Plaintiffs have also adduced evidence that YRC was grossly negligent in hiring, retaining, training, supervising, and entrusting a truck to Thorp.

To establish liability for negligent hiring, retention, supervision, training, or entrustment, plaintiffs must establish a "nexus" between the driver's past performance and the automobile accident at issue. *See Sanchez v. Swift Transp. Co. of Ariz., LLC*, 2016 WL 10587126, at *9-10 (W.D. Tex. June 14, 2016). Plaintiffs must show the existence of "prior incidents that are related to the accident at issue, frequent, and recent." *Id.* at *9. Moreover, to prove *gross* negligence, plaintiffs must submit proof sufficient to establish by clear and convincing evidence that YRC was "aware of the peril caused by its employee, but demonstrate[d] by [its] acts or omissions that it [did] not care." *Id.* at *10.

The majority of Thorp's 50+ disciplinary violations are unrelated to road safety: they involve tardiness and absenteeism. But Thorp *did* receive four warning letters for exceeding

the maximum run time permitted by law: one each in 2006, 2001, 1997, and 1995.[7] Run time violations like these can be sufficient to support a finding of gross negligence. *See, e.g., Perez Librado*, 2004 WL 1490304, at *6 (holding there was genuine issue of material fact as to gross negligence where employee had 322 policy violations in the 20 months before the accident, including 13 hours-of-service violations in a single month, and evidence suggested that employee further violated hours-of-service rules in week leading up to accident); *Dalworth Trucking Co. v. Bulen*, 924 S.W.2d 728, 733 (Tex. App. 1996, no writ) (holding there was fact issue as to gross negligence where employee "had a long history of safety violations, including over-hours driving," and incurred four over-hours violations in the four days preceding the accident). A reasonable jury could find that these past run time violations were related to the accident in question: it could find that these infractions may have motivated Thorp to finish his route quickly instead of slowing down, and these infractions might also evince a tendency by Thorp to "push forward and deal with the consequences later." Ps. Br. 24. YRC certainly was aware of the disciplinary letters that YRC itself sent to Thorp. Nonetheless, YRC continued to employ Thorp, did not provide him any extra supervision or training, and continued to entrust him with a semi truck. A reasonable jury could find that these acts and omissions constituted gross negligence. Thus plaintiffs have submitted sufficient evidence to create a genuine issue of material fact.

---

[7]The 1995 violation involved Thorp's exceeding the maximum amount of time a driver can work in a given week, rather than the maximum amount of time a driver can operate his vehicle without taking a break.

V

Plaintiffs have failed, however, to present evidence that would enable a reasonable jury to find that YRC is vicariously liable for Thorp's alleged gross negligence. Plaintiffs cite authority for the proposition that a corporation can be liable for punitive damages based on the gross negligence of a vice principal. *See* Ps. Br. 11 (citing *Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 921-22 (Tex. 1998)). But plaintiffs do not argue that Thorp was a vice principal of YRC, nor do they cite any evidence in support of this proposition. "Rule 56 does not impose upon the district court . . . a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Evanston Ins. Co. v. Consol. Salvage, Inc.*, 2018 WL 5980496, at *2 (N.D. Tex. Nov. 14, 2018) (Fitzwater, J.) (alteration in original) (quoting *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014)). "The court is not obligated to consider evidence that the nonmovant fails to cite when opposing the summary judgment motion." *Id.* (citing Rule 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record.")). Thus plaintiffs' failure to make an argument or cite evidence on this point is dispositive. The court grants defendants' motion for summary judgment insofar as plaintiffs seek to hold YRC vicariously liable for Thorp's alleged gross negligence.

* * *

For the foregoing reasons, the court denies defendants' motion for partial summary judgment except insofar as plaintiffs seek to hold YRC vicariously liable for Thorp's alleged gross negligence.

**SO ORDERED**.

June 4, 2019.

_____
SIDNEY A. FITZWATER
SENIOR JUDGE